UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 4:12-CV-1511 CAS<br>) |
| A.L.L. CONSTRUCTION, LLC, | )<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' Motion for Default Judgment. Plaintiffs filed this action to recover delinquent contributions and liquidated damages allegedly owed to the plaintiff employee benefit funds pursuant to 29 U.S.C. §§ 185 and 1132. Plaintiffs also seek to recover attorneys' fees, accounting fees, and costs incurred in this action. Defendant has not filed any response to the motion and the time to do so has passed.[1]

**I. Background**

This case was filed on August 23, 2012. Plaintiffs served the complaint and summons on defendant A.L.L. Construction, LLC, on September 5, 2012. Defendant has not entered an appearance or filed an answer. A Clerk's Entry of Default pursuant to Rule 55(a), Federal Rules of Civil Procedure, was entered on October 11, 2012. On October 25, 2012, the Court granted plaintiffs' Motion for Default Order to Compel an Accounting, and ordered defendant to provide to plaintiffs its books and

---

[1] The Court notes that although defendant is in default and therefore plaintiffs were not required to serve any papers on it after serving the summons and complaint, see Rule 5(a)(2), Fed. R. Civ. P., it appears that plaintiffs' counsel has mailed copies of all subsequent filings to the defendant to the attention of its president, Anton Lumpkins.

records reflecting or pertaining to all hours worked by and wages paid to defendant's employees "from April 1, 2007 to the present." Order of Oct. 25, 2012 at 2 (Doc. 12).

The Complaint, which was filed August 23, 2012, asserts that defendant failed to "submit monthly report forms for the period of April 1, 2007 to the present." Compl. at 5, ¶ 9. The prayer for relief seeks an interlocutory order of accounting to "determine the amounts owed to plaintiffs during the period of April 1, 2007, to date;" and "judgment against the defendant based upon the findings of the audit;" as well as "an order requiring defendant to make payments in the future to the employee benefit funds in accordance with the terms and provisions of the collective bargaining agreement, and such collective bargaining agreements as may be negotiated and executed in the future[.]" Compl. at 5.

Defendant has been bound by a collective bargaining agreement with Laborers Locals 42-53-110 since March 31, 2003, when it signed the 1999-2004 collective bargaining agreement between Laborers Locals 42-53-110 and the Site Improvement Association. (Schell Aff. ¶ 2; Exs. 1-2 thereto.) When defendant signed the 1999-2004 collective bargaining agreement, it agreed "to be bound by all subsequent agreements, renewals, changes or extensions thereto made by the original parties, unless notice of termination is given to the Union by the undersigned not less than sixty (60) days nor more than ninety (90) days prior to any termination date." (Id. ¶ 3; Ex. 1 thereto.) No notice of termination was received from defendant. (Id. ¶ 3.)

The original parties to the Site Improvement Agreement negotiated a successor agreement, effective from March 1, 2004 to February 28, 2009. (Schell Aff. ¶ 4; Ex. 3 thereto.) Defendant subsequently signed the 2004-2009 collective bargaining agreement on November 1, 2007. (Id. ¶ 5; Ex. 4 thereto.) The signature page to the 2004-2009 agreement contained the same language as the

signature page to the 1999-2004 agreement quoted above. (Id.) The original parties to the Site Improvement Agreement again negotiated a successor agreement, effective from March 1, 2009 to February 28, 2014. (Id. ¶ 6; Ex. 5 thereto.) Defendant did not submit a timely notice of termination as required by Exhibit 4. (Id. ¶ 6.)

The agreements require defendant to submit monthly reports and remit contributions to the Laborers Funds. (Schell Aff., ¶ 7, Exs. 2, 3, 5 thereto.) The collective bargaining agreements require the payment of liquidated damages of twenty percent (20%) on delinquent contributions, as well as interest, attorneys' fees, and payroll examination costs. (Id. ¶¶ 7-9; Exs. 2, 3, 5 thereto.)

Plaintiffs have established that defendant is a party to collective bargaining agreements with Laborers Local Unions 42-53-110. These agreements require defendant to submit contributions to the Laborers Funds, and authorize plaintiffs to examine the financial records of defendant to ascertain whether the required contributions were made.

As stated above, on October 25, 2012 the Court ordered defendant to submit to an accounting for the time period of "April 1, 2007 to the present" within thirty days of the date of the order. (Doc. 12.) Plaintiffs assert that defendant failed to comply with the Court's Order and describe subsequent events as follows:

> [O]n November 28, 2012 plaintiffs filed a motion for contempt as a result of defendant's noncompliance. (Documents #13-14). Thereafter, defendant submitted various documents for a payroll examination. (Document #18).
>
> However, defendant failed to provide any of its cash disbursement records, employee time cards, or any of its monthly contribution reports to any ERISA fringe benefit fund for the entire time period covered by the payroll examination between April 1, 2007 and December 31, 2012. (Affidavit of Dennis Nilges, ¶4; Ex. 1 to Nilges Aff.) Defendant also did not provide all of the requested documents for the payroll examination for certain time periods covered by the payroll examination. (Nilges Aff., ¶5). Defendant failed to provide its completed employment tax return forms (Federal Form 941) for the third quarter of 2008 through the second quarter

3

of 2010 and for the first quarter of 2011 through the fourth quarter of 2012. (Nilges Aff., ¶5). Defendant also failed to provide any or complete State Unemployment Reports (SUTA) for the third quarter of 2008 through the fourth quarter of 2009 and for the first and third quarters of 2011 through the fourth quarter of 2012. (Nilges Aff., ¶5). Also, defendant failed to provide its W-2s for 2009 and 2012 and its W-3s, along with its Federal Form 940s, for 2009 through 2012. (Nilges Aff., ¶5). Federal Form 1096/1099s were also not provided by defendant for 2009 through 2012. (Nilges Aff., ¶5). Finally, defendant failed to provide its earnings records of its employees for the periods of July 1, 2008 through March 31, 2009 and for October 1, 2009 through December 31, 2012. (Nilges Aff. ¶5).

Despite this lack of documentation, plaintiffs' accountants were able to conduct an examination for the periods in which defendant provided documents. (Nilges Aff., ¶6). For example, defendant reported employees Frost, Hamber, Harley, Hopson, Mann, Miller, Ravenscraft, and Wesley to the Laborers Funds as performing laborers work for various months during the examination period. (Nilges Aff., ¶¶8-9). However, the accountants were forced to estimate the hours worked by Messrs. Hamber and Frost based on the limited documentation that defendant provided for the examination, but only for the time periods in which defendant failed to produce any documentation. (Nilges Aff., ¶¶6, 8). Documents provided by defendant indicated that employees Frost and Hamber worked for various months in multiple years during the time period covered by the payroll examination. (Nilges Aff., ¶8). Based on this and the lack of documentation provided by defendant, plaintiffs' accountants concluded that Messrs. Hamber and Frost performed covered laborers work for defendant for the duration of the examination period. (Nilges Aff., ¶8).

Notwithstanding the limited documentation provided by defendant, plaintiffs' accountants attempted to engage in reasonable efforts to verify whether certain employees of defendant performed laborers work that was covered by the collective bargaining agreement. (Nilges Aff., ¶7). For example, plaintiffs' accountants were able to confirm that employee Robert Hill was a member of Operating Engineers' Local 513, and was likely performing operators and not covered laborers work for defendant. (Nilges Aff., ¶10). Thus, Mr. Hill was not included on the final accounting report. (Nilges Aff., ¶10). Moreover, plaintiffs' accountants were advised by plaintiffs' counsel that employee Taron Lumpkins had submitted a detailed declaration that he did not perform any covered laborers work during the period of the payroll examination. (Nilges Aff., ¶11). As a result, Taron Lumpkins was removed from the report. (Nilges Aff., ¶11).

During the course of the payroll examination, plaintiffs' counsel had numerous conversations with defendant and repeatedly requested additional records from defendant. (Affidavit of Matthew J. Gierse, ¶¶9-10; Ex. 1 to Gierse Aff.). However, no additional financial documentation was provided. (Gierse Aff., ¶9).

4

> Plaintiffs' counsel also had telephone conversations with employees Hamber and Frost. (Gierse Aff., ¶¶11-12). During these telephone conversations, neither employees Frost or Hamber could specifically recall the time periods in which they performed covered laborers work for defendant. (Gierse Aff., ¶¶11-12).

Pls.' Mem. Supp. Mot. for Default J. at 3-5.

Based on the payroll examination described above covering the period of April 1, 2007 through December 31, 2012, plaintiffs assert that defendant owes $53,880.69 in unreported contributions. In addition, pursuant to the collective bargaining agreements and ERISA, 29 U.S.C. § 1132(g)(2), plaintiffs assert they are owed $10,775.86 in liquidated damages and $8,224.13 in interest based on the unreported contributions for a total of $72,880.68 owed based on the payroll examination. (Nilges Aff. ¶ 12, Ex. 1 thereto.)

Plaintiffs also assert that for the hours defendant did report to the funds, the reports were late for the months of July 2007, August 2007 and November 2007, and thus defendant incurred additional liquidated damages in the amount of $2,019.33. (Schell Aff. ¶ 11; Ex. 6 thereto.) Finally, since the period covered by the payroll examination, plaintiffs assert that defendant has failed to pay $4,860.44 in contributions and has incurred an additional $972.09 in liquidated damages for a total of $5,832.53 owed for the month of February 2014. (Schell Aff. ¶ 12, Ex. 6 thereto.) Therefore, plaintiffs assert that the total amount owed to the Funds in unreported contributions, liquidated damages and interest is $80,732.54. (Schell Aff. ¶ 13.)

The collective bargaining agreements and ERISA, 29 U.S.C. § 1132(g)(2), require defendant to pay plaintiffs' attorneys' fees, accounting fees, and costs. Plaintiffs assert that they incurred $1,190.00 in payroll examination fees, $13,232.50 in attorneys' fees, and $403.74 in costs.

**II. Discussion**

Default judgments are not favored in the law, <u>United States ex rel. Time Equip. Rental & Sales, Inc. v. Harre</u>, 983 F.2d 128, 130 (8th Cir. 1993), and their entry is discretionary. See <u>Taylor v. City of Ballwin, Mo.</u>, 859 F.2d 1330, 1332 (8th Cir. 1988). There is a judicial preference for adjudication on the merits. <u>Oberstar v. F.D.I.C.</u>, 987 F.2d 494, 504 (8th Cir. 1993).

Even when a defendant is in default and all of the requirements for a default judgment are satisfied, a plaintiff is not entitled to default judgment as a matter of right. 10 James Wm. Moore, et al., <u>Moore's Federal Practice</u> § 55.31[1] (3d ed. 2013); <u>see</u> <u>Ackra Direct Mktg. Corp. v. Fingerhut Corp.</u>, 86 F.3d 852, 856 (8th Cir. 1996) (review of order entering default judgment is for abuse of discretion). Prior to the entry of a discretionary default judgment, this Court must satisfy itself that the moving party is entitled to judgment, including by reviewing the sufficiency of the complaint, and the underlying substantive merits of its claim. 10 <u>Moore's Federal Practice</u> § 55.31[2].

    A. <u>Judgment Amount Sought Exceeds Demand for Relief</u>

As stated above, the Complaint filed August 23, 2012 asserts that defendant failed to "submit monthly report forms for the period of April 1, 2007 to the present" and seeks an interlocutory order of accounting to "determine the amounts owed to plaintiffs during the period of April 1, 2007, to date" and "judgment against the defendant based upon the findings of the audit."

Rule 54(c) of the Federal Rules limits default judgment to the relief sought in Complaint:

> **(c) Demand for Judgment; Relief to be Granted**. A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

Rule 54(c), Fed. R. Civ. P. A leading federal practice treatise offers this explanation of the principles underlying the Rule:

> The first sentence of Rule 54(c) states that a judgment by default is limited to the relief demanded in the complaint. The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.
> 
> . . . .
> 
> The restriction on the award of relief in the first sentence of the rule most clearly is justified in the case of a completely nonappearing defendant. That defendant receives only the original complaint and therefore is aware only of the prayer for relief set forth in that document. The decision not to enter the action is based solely on the information in that pleading and defendant should be allowed to rely on it.

10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2663 (3d ed. 1998) (footnotes omitted).

The Complaint in the instant case seeks an audit for the period from April 1, 2007 "to the present," which the Court interprets as the date the Complaint was filed, August 23, 2012. The Complaint also seeks judgment "based upon the findings of the audit." The Court finds plaintiffs have established that, under the terms of the applicable collective bargaining agreements and ERISA, they are entitled to recover delinquent contributions, liquidated damages, costs and attorneys' fees in connection with defendant's failure to make (or to timely make) the required contributions up through the date this action was filed.

Plaintiffs' motion for default judgment also seeks delinquent contributions from August 24, 2012 through December 31, 2012, however, and for February 2014. This request for judgment goes beyond the relief sought in the Complaint and appears to run afoul of Rule 54(c)'s requirement that a default judgment not differ in kind from, or exceed in amount, what is demanded in the

7

pleadings."[2] Plaintiffs' complaint could have sought judgment for unpaid contributions, liquidated damages, fees and costs accruing through the date of judgment, but did not do so. Under these circumstances, defendant did not have fair notice that failure to defend a complaint filed in August 2012 concerning a debt due for the period "April 1, 2007 to the present" could lead to a default judgment on additional debt whose existence did not arise, and whose amount could not be calculated, until months or years after the complaint had been served upon it.

If a plaintiff wishes to obtain relief that was not sought in the original complaint, it must amend or supplement the complaint under Rule 15(a) or 15(d),[3] and serve the amended or supplemented complaint on the defendant under Rule 4. See Rule 5(a)(2), Fed. R. Civ. P. This notice allows the defendant the opportunity to "reevaluate and reverse the earlier decision not to defend actively." 10 Wright & Miller, Federal Practice and Procedure, § 2663. If the plaintiff seeks to add additional claims based on conduct that occurred before suit was filed, it can do so under Rule 15(a), which gives a plaintiff the right to amend the complaint "once as a matter of course" where the non-appearing defendant has not served "a responsive pleading." Fed. R. Civ. P. 15(a)(1)(B). If the plaintiff seeks to add additional claims based on "any transaction, occurrence, or event that happened after the date" of the original complaint, it must seek leave of Court to file a supplemental

---

[2] Although the Court granted plaintiffs' motion for an interlocutory order of accounting and ordered defendant to provide its books and records for the period from "April 1, 2007 to the present" by Order dated October 25, 2012, this cannot serve to amend the Complaint.

[3] "Rule 15 facilitates the amendment of pleadings and the presentation of supplemental materials. Amended pleadings generally incorporate events that occurred prior to the filing of the original pleading, while supplemental pleadings include transactions or occurrences that take place after the filing of the original pleading." 3 James Wm. Moore, et al., Moore's Federal Practice § 15.02[1] (3d ed. 2013). A supplemental complaint would seem appropriate in this matter.

8

complaint under Rule 15(d), which requires the plaintiff to give the defendant "reasonable notice" of the motion. Rule 15(d), Fed. R. Civ. P.

As noted above, Rule 5(a)(2) generally excuses the plaintiff from having to serve anything but the summons and complaint on a non-appearing defendant. An exception exists, however, for a "pleading that asserts a new claim for relief" against the defendant, such as an amended complaint under Rule 15(a) or a supplemental complaint under Rule 15(d). These pleadings "must be served on [the defendant] under Rule 4." Fed. R. Civ. P. 5(a)(2). The fact that plaintiffs have mailed copies of their filings to the defendant does not meet the requirements of the Rule.

The Court will therefore deny plaintiffs' motion for default judgment without prejudice, and give plaintiffs an opportunity to (1) amend or seek leave to supplement their complaint, or (2) amend their motion for default judgment to seek damages only as prayed for in the original complaint.

B. Determination of Reasonable Attorneys' Fees

Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), makes an award of attorneys' fees mandatory in an action by a fiduciary for or on behalf of a plan to enforce Section 1145 which results in a judgment in favor of the plan. See Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 931 (8th Cir. 1984). The statute directs a court to award the plan "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2)(D). The plaintiffs bear the burden to prove that the attorneys' fees they request are reasonable. See Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983).

Plaintiffs submit the affidavit of Matthew J. Gierse, which in pertinent part lists the hourly rates charged by partners, associates and paralegals in plaintiffs' counsel's law firm; states the number of hours billed by specific individuals in the years 2012, 2013 and 2014, but does not

identify whether those individuals are partners, associates or paralegals; includes a one-paragraph summary of services performed; and states that plaintiffs "have incurred $13,232.50 for legal services in this matter." Gierse Aff. at 2, ¶ 7.

"The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." Local 513, Int'l Union Operating Engineers v. Larry Ortmann Contracting, Inc., 2009 WL 151698, at *2 (E.D. Mo. Jan. 22, 2009). Hours that were not reasonably expended should be excluded, Hensley, 461 U.S. at 434, and the onus is on the party seeking the award to provide evidence of the hours worked and the rate claimed. Id. at 433. The lodestar approach has been applied to the determination of the reasonableness of an attorneys' fee award under § 502(g)(2). Local 513, 2009 WL 151698, at *2 (citing cases).

Based on the evidence presented by plaintiffs, the Court is unable to determine the lodestar amount, and whether the services performed by plaintiffs' attorneys were reasonable and necessary to the litigation of this case. Plaintiffs must provide additional information, preferably in the form of billing records, for the Court's review.

## III. Conclusion

For the foregoing reasons, the Court will deny without prejudice plaintiffs' motion for default judgment. Plaintiffs may amend or seek leave to supplement their complaint pursuant to Rule 15, as appropriate, and serve the amended or supplemental complaint on the defendant under Rule 4; or may submit an amended motion for default judgment in conformance with this order. In either event, plaintiffs shall provide additional information concerning their attorneys' fees, sufficient to permit the Court to determine whether the claimed fees were reasonable.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for default judgment is **DENIED without prejudice**.  [Doc. 27]

　　　　　　　　　　　　　　　　　　　／s／ Charles A. Shaw
　　　　　　　　　　　　　　　　　　　**CHARLES A. SHAW**
　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

Dated this  23rd  day of April, 2014.